LE GRAND YOUNG, HENRY WAGENER BREWING
COMPANY, a Corporation, M. C. MOON, and JAMES
THOMPSON, Respondents, v. SALT LAKE CITY, a
Municipal Corporation, Appellant.

### No. 1301.   (67 Pac. 1066.)

1. **Municipal Corporations: Territory: Disconnection: Del-
egation of Legislative Power: Statutes: Constitution-
ality: Determination.**
   Revised Statutes, chapter 15, title 10, section 288, et seq. (the only
   general law for changing the boundaries of the several incor-
   porated cities existing when the Constitution was framed) au-
   thorizes the district court to proceed to disconnect land border-
   ing on any city, on petition of a majority of the owners thereof,
   stating reasons therefor, and accompanied by a map or plat of
   the property. On filing of such petition a summons to the
   city is required. Issue is then joined as in other cases, and if
   the court finds the petition is true, and that justice and equity
   require the disconnection, it is to appoint commissioners to ad-
   just the terms as to the liabilities of the city which accrued
   during the connection, and as to the mutual property rights of
   the city and territory. After the hearing and report of the
   commissioners, the court is to decree in accordance therewith
   and with the petition, or modify or reject the report and ap-
   point new commissioners, and continue the cause for further
   action. *Held*, not violative of Constitution, article 5, section
   1, and Id. article 6, sections 1, 29, as delegating power to the
   court and commissioners to legislate, but valid, as merely re-
   quiring the court to judicially determine whether facts found
   by it entitle the petitioners to relief, especially as Constitution,
   article 11, section 5, and Id. article 6, section 26, subdivision
   12, restrict the power of special legislation, particularly as to
   cities.

2. **Same: When Adopted from Another State.**
   Where a statute was adopted from another State and the Supreme
   Court of that State, under similar constitutional provisions,

24 Utah—21

has held the act constitutional, this determination should at least in doubtful cases, be considered as favorable to the constitutionality of the statute.[1]

**3.  Same: When Reasonable Doubt Exists.**
A reasonable doubt as to the constitutionality of a statute will be resolved in favor of its validity.[2]

(Decided March 1, 1902.)

Appeal from the Third District Court, Salt Lake County.— *Hon. Ogden Hiles*, Judge.

Petition by Le Grand Young and others, in conformity to section 288, Revised Statutes 1898, against Salt Lake City, praying that certain land described therein be detached and disconnected from said city. From a judgment in favor of the petitioners, the city appealed.

AFFIRMED.

*C. B. Stewart, Esq.*, for appellant.

By section 1, article 5, of the Constitution, the powers belonging to one department of government can not be exercised by any other; and section 29, article 6, prohibits the Legislature from delegating to any commission, etc., power to make, supervise or interfere with any municipal improvement, etc. Section 1, article 6 divides the lawmaking power into two departments, and section 22, article 6, points out the manner in which a bill becomes a law.

Whether cities, towns and villages should be incorporated, and if incorporated whether enlarged or contracted in their boundaries, presents no question of law or fact for judicial determination. Courts may determine what are the corporate limits already established, and they may determine

---

[1] People v. Ritchie, 12 Utah 180, 42 Pac. 209.
[2] State v. Tingey, 24 Utah 225, 67 Pac. 33.

whether the municipality has exceeded its power under the law, and they may inquire what is the law, and whether or not it has been violated or complied with, but they can not legislate. City of Galesburg v. Hawkinson, 75 Ill. 158; Blanchard v. Bissell, 11 Ohio St. 96; Gray v. Crackett, 30 Kans. 138; People v. Stewart, 7 Cal. 143.

Provisions in a statute for the incorporation of a village authorizing a court to determine whether the lands embraced in the petition ought to be justly included in the village, and whether the interests of the inhabitants will be promoted by the incorporation, and giving the court power to enlarge or diminish the boundaries as justice may require, constitute an unconstitutional delegation to the court, of legislative power. Re Application for Incorporation of North Milwaukee (Wis.), 33 L. R. A. 638; State v. Armstrong, 3 Sneed 634; Territory, Kelly v. Stewart, 1 Wash. 98, 8 L. R. A. 106; People v. Nevada, 6 Cal. 143.

The true distinction is between the delegation of power to make the law, which necesssarily. involves a discretion as to what it shall be, and conferring authority or discretion as to its execution to be exercised under and in pursuance of law.' The first can not be done; to the latter no valid objection can be made.

The Legislature can not delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. Field v. Clark, 143 U. S. 693-4; Cooley Const. Lim., 139; Dowling v. Insurance Co., 97 Wis. 70; 37 L. R. A. 160; 39 L. R. A. 155; 88 Cal. 491.

*Benner X. Smith, Esq.*, for respondents.

The only contention is that the statute is unconstitutional, inasmuch as it is claimed that the formation of municipal cor-

porations, the determination of their boundaries, the enlargement or restriction of their limits, is purely a matter for the Legislature, and that the statute in question is an unlawful and unconstitutional delegation of a legislative function to the judiciary.

It is claimed under the provisions of the Constitution, cited by the appellant, distributing the powers of the government, that the statute under consideration is unconstitutional, and their claim in effect is, and must be, that the statute gives the court the right to make the law. It is true that the judiciary can not make a law; the Constitution has vested that power in the Legislature, and any law which attempts to vest such power in a judge, in the executive, or any ministerial officer, would be bad; but conceding the impossibility of the Legislature to delegate the power to make a law, it does not follow that it may not make a law which is to take effect upon the ascertainment of certain facts, and may vest the power to determine those facts in some other branch of the government, and to confer upon the courts the right to determine such facts. That principle is as old as the law itself. Conceding, for the sake of argument, that there may be some doubt about the validity of the law (for there are a few decisions to which attention is hereafter called which are against the validity of laws somewhat similar, but the great weight of authority, as we think, is in favor of its validity), we would call the court's attention to a general rule that unless a law is unconstitutional beyond all reasonable controversy, then the law should be sustained. Cooper v. Telfair, 4 U. S. 14; Adams v. Howe, 14 Mass. 340; State v. Wilcox, 45 Mo. 458; Sharpless v. Philadelphia, 21 Penn. State 147.

The effect of the law in question is not to create a new body politic; whatever is created, is the creature of the Legislature, not of the court. It derives all of its powers from the law as passed. The court gives the law effect after it has determined judicially the existence of the requisites as fixed

by the Legislature.    When this law was passed it was perfect in all its parts.    The only thing committed to the court was to determine certain issuable facts.    The law did not arise from the decision of the court upon the facts as alleged, but the decision of the court came from the law, and it alone declared the consequences which must flow from the facts, and to claim that a legislative enactment is less a law because its operation depends on a future event, or the determination by a court of certain facts, is to assert that half of the statutes upon our books are unconstitutional, for the reason argued by the appellant.

If, under the Constitution of this State, it would be permissible for the Legislature to pass a special law incorporating a city, or changing its boundaries, there might be some merit in the appellant's contention; but the fact that such power is denied to the Legislature argues strongly for us.    The Constitution requires the organization of cities, and the determination of their boundaries, by general laws; they must, as a matter of necessity, become effective by events to happen in the future, and to determine when such events have happened, when it is necessary to create, enlarge, or restrict, the boundaries of a city, as the case may be, the Legislature must provide some tribunal to determine the facts, and what better, or safer tribunal than the courts could be found; and when the court acts in the enlargement or restriction of municipal boundaries, it is not a creation of the court, but it is the result, and act of a law.    The court simply finds whether the conditions exist which authorize the restriction of corporate limits, and when these facts are ascertained, the law, by its own force, enlarges, or restricts the corporate limits.    If this were not so, we would be in a peculiar position in this State; carried to its logical conclusion, the result would be that municipal corporations could not be created; that as they exist to-day, in reference to their boundaries and limits, they must exist for all time, or the Legislature must pass a general law making

the boundaries of all cities identical, which, in one case, might be insufficient for its municipal purposes, and in another, would be largely in excess of its necessities. If this law is unconstitutional, then the general incorporation law is unconstitutional, for that contains a delegation to a ministerial officer, the Secretary of State, to determine whether the articles of incorporation comply with the conditions provided by law. Again the delegation to the judiciary of the power to grant divorces would be bad. Divorces have always been a subject for legislative action unless restricted by the Constitution. The same thing would be true in reference to changing the name of persons, cities, and corporations, which is a legislative function. Again, in the case of local option laws, which have been held constitutional by the great weight of authority.

The statute in question was taken from, and is nearly identical with, a statute from the State of Iowa (Code of Iowa, 1897, sec. 622), and which at the time of its adoption in this State had been construed and declared constitutional by the highest court of that State. We, therefore, took it, bound by that construction. People v. Ritchie, 12 Utah 180.

The strongest cases relied upon by the appellant are: Galesburg 'v. Hawkinson, 75 Ill. 153; People v. Bennett, 25 Mich. 451.

And opposed to these are the following cases directly in point upon principle, and some of them upon all fours: Callen v. Junction City, 43 Kan. 632; Forsythe v. Hammond, 68 Fed. Rep. 774; Burlington v. Leebrick, 43 Iowa 252; Ford v. North Des Moines, 80 Iowa 626; Evans v. Council Bluffs, 65 Iowa 238; McKean v. City, 51 Iowa 306; Emporia v. Smith, 42 Kan. 433; Huling v. Topeka, 44 Kan. 577; Hurla v. Kansas City, 46 Kan. 738; Kayser v. Bremen, 16 Mo. 88; State v. Weatherby, 45 Mo. 17; State v. Wilcox, 45 Mo. 458; Lammert v. Lidwell, 62 Mo. 188; Wahoo v. Dickinson, 23 Neb. 426.

MINER, C. J.—The respondents in this case filed their petition in conformity with chapter 15, title 10, section 288, Revised Statutes 1898, praying that certain land described therein be detached and disconnected from Salt Lake City. It is alleged, among other things, that the land in question is not platted for any municipal purpose, and is not situated so as to render it desirable to be platted to be used for residence or business purposes, and that the same was no part of the town-site entry of Salt Lake City; that it is situated five miles from the business portion of the city, and two miles from the platted and inhabited part of the same; that lying between said land and the city is the Ft. Douglas military reservation, and that the only way to reach said land is over said reservation; that most of said property is situated north of Emigration Canon, along the foothills and mountain side, and is mountainous, broken, and unfit for municipal or residence purposes; that a range of foothills lies between it and the reservation; that the land never has received or can receive any fire or police protection, or other municipal benefit of any kind; that the city has contracted a bonded indebtedness of about $2,750,000 for permanent improvements in said city, none of which are situated near this property, that the assessed valuation of said property in 1900 was $14,755; that prior to 1896, and the adoption of the Constitution, the owners of the property were not required to pay taxes thereon, but the same were remitted, because the said property did not receive any municipal benefits. To this petition a demurrer was interposed by the defendant, which was overruled. After a hearing the court found the facts in accordance with those stated in the petition, and ordered the land to be severed from the city, and discharged from its jurisdiction and control, without any obligation to the city for taxes or bonded indebtedness thereof. From this order the defendant appeals.

Section 288, Revised Statutes 1898, provides as follows: "Whenever a majority of the real property owners of any

territory within and lying upon the borders of any city, shall file with the clerk of the district court of the county in which such territory lies, a petition praying that such territory be disconnected therefrom, and such petition sets forth reasons why such territory should be so disconnected from such city, and is accompanied with a map or plat of the territory sought to be disconnected, and designates no more than five persons who are empowered to act for said petitioners in such proceedings, such court shall cause a notice of the filing of the same to be served upon said city, in the same manner as a summons in a civil action, and shall also cause notice to be published in some newspaper having a general circulation in such city, for a period of ten days. Issue shall be joined and the cause tried as provided for the trial of civil causes, as nearly as may be. The proper authorities of such city or any person interested in the subject-matter of said petition, may appear and contest the granting of the same." Section 289 provides: "If the court finds that the petition was signed by a majority of the real property owners of the territory concerned, and that the allegations of the petition are true, and that justice and equity require that such territory or any part thereof should be disconnected from such city, it shall appoint three disinterested persons as commissioners to adjust the terms upon which such part shall be so severed as to any liabilities of such city that have accrued during the connection of such part with the corporation, and as to the mutual property rights of the city and the territory to be detached." Section 290 provides: "The commissioners shall, at a time by them fixed, hear the agents named in the petition, and also the proper authorities of the city in regard to the subject-matter so submitted, and, as soon as practicable, report their findings in the premises to the court. Upon the filing of which report, the court shall decree in accordance therewith, and with the prayer of the petition, unless for good cause shown the court shall modify the same, or shall reject or set aside the report and appoint

new commissioners, and continue the cause for further action to be had thereon." Section 1, article 5, of the Constitution, divides the power of the government into legislative, executive and judicial departments, and provides that no one department can exercise functions appertaining to either of the others, except in cases expressly provided. Section 1, article 6, provides: "The legislative power of this State shall be vested in a Senate and House of Representatives, which shall be designated The Legislature of the State of Utah." Section 29, article 6, reads as follows: "The Legislature shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, to levy taxes, to select a capitol site, or to perform any municipal functions." Section 5, article 11, reads as follows: "Corporations for municipal purposes shall not be created by special laws; the Legislature, by general laws, shall provide for the incorporation, organization, and classification of cities and towns in proportion to population; which laws may be altered, amended, or repealed." Sec. 26, art. 6, subd. 12.

The appellant contends that the statute under which this proceeding was taken is unconstitutional and void, and that it attempts to delegate power to the district court and commissioners to legislate, and that the power given is a legislative power, and that the court can not be invested with it by the Legislature, under the Constitution. It is true that, under the Constitution, powers belonging to one department of government can not be exercised by others. Courts can not legislate or make laws. This power is vested in the Legislature, and any law which confers such power upon a court or executive officer is unconstitutional and void. The question presented here is, do the general laws of this State giving the district court power to disconnect certain portions of an incorporated city from its jurisdiction and limits confer upon

the court legislative power to make laws? It will be con-
ceded that, while the Legislature can not delegate power to
make laws, it may still make laws to take effect upon the
ascertainment of certain facts and conditions, and may dele-
gate the duty to determine the existence of such facts to some
other branch of the government. Field v. Clark, 143 U. S.
693, 12 Sup. Ct. 495, 36 L. Ed. 294; Dowling v. Insurance
Co., 97 Wis. 50, 72 N. W. 229. This duty of determining
the facts and conditions as they exist may also be conferred
upon the courts. Under the provisions of the statute, when-
ever a petition is filed with the court, stating the requisite
facts, and summons is issued and served upon the city, issue
is then joined as in other cases. If the court finds the alle-
gations in the petition are true, and that justice and equity
require that the territory named should be disconnected from
the city, it is required to appoint three commissioners, who
are disinterested persons, to adjust the terms upon which a
severance shall be made, as to the liabilities that have ac-
crued, etc. The commissioners appointed are required to re-
port their findings to the court. Thereupon the court may
decree in accordance with such report, or, if good cause ap-
pears, it may modify such report, or wholly set it aside, and
appoint new commissioners, and continue the case for further
hearing. In the present case the court has followed the stat-
ute. The facts required to be shown, under the statute, must
be passed upon by the court. A majority of the owners of
land must petition. The land must lie upon the borders of
the city, and the reasons for such severance must be stated.
A map or plat of the property must accompany the petition.
These are issuable facts. The statute provides that issue
may be joined thereon and the cause tried as is provided for
the trial of civil cases, as near as may be. The determination
of these issues and the facts and findings of the commissioners
is a judicial act, and does not pertain either to the legislative
or executive department of the State. The act in question

is a general act applying to all the cities in the State. It provides that certain territory, under certain conditions, may be severed from an incorporated city, if the court considers the facts justify such severance. The right to disconnect the territory depends entirely upon the facts and the existence of the conditions covered by the statute, and the determination of the question involves an examination and weight of the testimony, which is certainly in the nature of a judicial determination. The court gives the law effect after it has determined judicially the existence of the requisites as fixed by the Legislature. The court is simply to determine the issuable facts. It is a judicial act to determine what the facts in a given case are, and whether such facts, when found, entitle the party to the relief sought. The statute names the conditions under which land lying on the borders of a city may be detached, and authorizes the court to determine whether such conditions exist, and whether, under all the facts, justice and equity require the land to be detached. The court is required to determine these questions. They are therefore of such a judicial character as to come within the jurisdiction of the district court. Evans v. City of Council Bluffs, 65 Iowa 238, 21 N. W. 584; City of Burlington v. Leebrick, 43 Iowa 252; Ford v. Town of North Des Moines, 80 Iowa 626, 45 N. W. 1031; McKean v. City of Mt. Vernon, 51 Iowa 306, 1 N. W. 617; City of Emporia v. Smith, 42 Kan. 433, 22 Pac. 616; Huling v. City of Topeka, 44 Kan. 577, 24 Pac. 1110; Hurla v. Kansas City, 46 Kan. 738, 27 Pac. 143; State v. Weatherby, 45 Mo. 17; Lammert v. Lidwell, 62 Mo. 188, 21 Am. Rep. 411; Wahoo v. Dickinson, 23 Neb. 427, 36 N. W. 813; Forsythe v. City of Hammond (C. C.), 68 Fed. 774; Grusenmeyer v. City of Logansport, 76 Ind. 549; People v. Fleming (Colo. Sup.), 16 Pac. 298; Field v. Clark, 143 U. S. 693, 12 Sup. Ct. 495, 36 L. Ed. 294.

An additional reason for the holding is found in section

26, article 6, subdivision 12, Constitution, which provides: "The Legislature is prohibited from enacting any private or special laws in the following cases: . . . (12) Incorporating cities, towns or villages; changing or amending the charter of any city, town or village; laying out, opening, vacating or altering town plats, highways, streets, wards, alleys or public grounds. . . . In all cases where a general law can be applicable, no special law shall be enacted." And in section 5, article 11, which reads as follows: "Corporations for municipal purposes shall not be created by special laws; the Legislature, by general laws, shall provide for the incorporation, organization, and classification of cities and towns in proportion to population; which laws may be altered, amended or repealed." The Legislature is prohibited from enacting any special law when a general law can be applicable; and, by section 5, article 11, municipal corporations shall not be created by special laws, but general laws may be enacted, which may be altered, amended, or repealed. The statute in question is a general law, applying to all the cities in the State, without which the boundaries of the several incorporated cities in the State existing when the Constitution was framed might not be changed, but must remain indefinitely as existing at that time. This could not have been the intention of the framers of that instrument, nor would such a rule be in accordance with the spirit and terms of its provisions. See Eureka City v. Wilson, 15 Utah 53, 48 Pac. 41. The statute under consideration was adopted from Iowa. The Supreme Court of that State, under similar provisions of the Constitution, has held the act constitutional. This determination should, at least in doubtful cases, be considered as favorable to the constitutionality of the statute. People v. Ritchie, 12 Utah 180, 42 Pac. 209.

It is not without doubt and difficulty that we have arrived at the above conclusion. Many authorities from a high source hold a contrary doctrine—notably, the case of City of

Galesburg v. Hawkinson, 75 Ill. 158; People v. Bennett, 29 Mich. 451, 18 Am. Rep. 107; Territory v. Stewart, 1 Wash. St. 98, 23 Pac. 405, 8 L. R. A. 106; People v. Town of Nevada, 6 Cal. 143; Alcorn v. Hamer, 38 Miss. 652; Board of Harbor Com'rs of Port of Eureka v. Excelsior Redwood Co., 88 Cal. 491, 26 Pac. 375, 22 Am. St. Rep. 321. Considering the conflicting authorities upon this subject, and the high standing of the courts holding a contrary view, we can not say that we have no reasonable doubt as to the constitutionality of the law, independent of the fact that we may have adopted the construction of the court of Iowa when we adopted the statute from that State. When such a doubt exists, the statute will be upheld. Cooper v. Telfair, 4 U. S. 14, 1 L. Ed. 721; Sharpless v. Mayor, etc., 21 Pa. 147, 59 Am. Dec. 759; Adams v. Howe, 14 Mass. 340, 7 Am. Dec. 216; State v. Tingey, 24 Utah 225, 67 Pac. 33; Supervisors v. Brown, 112 U. S. 268, 5 Sup. Ct. 125, 28 L. Ed. 704.

The judgment of the district court is affirmed, with costs.

BASKIN and BARTCH, JJ., concur.