281 P.2d 216

David E. HOWARD et al., Plaintiffs and Respondents,

v.

TOWN OF NORTH SALT LAKE, a Municipal Corporation, Defendant and Appellant.

No. 8106.

Supreme Court of Utah.

March 21, 1955.

Stewart, Cannon & Hanson, Arthur H. Nielsen, Salt Lake City, for appellant.

VanCott, Bagley, Cornwall & McCarthy, Homer Holmgren, Gaylen S. Young, Wesley G. Howell, Salt Lake City, for respondent.

WORTHEN, Justice.

Appeal from an order of the trial court granting a petition to disconnect part of the territory of defendant town.

The appellant, Town of North Salt Lake, will be referred to herein as "the town." The respondents are real property owners who filed with the clerk of the district court of Davis County a petition to have the property described in their petition disconnected from the town. Respondents also include the interveners hereinafter referred to. Those respondents who filed the petition herein mentioned will be referred to as "the petitioners."

On April 21, 1952, the town, located in the southern part of Davis County and adjacent to Salt Lake County, pursuant to a petition signed by the owners of real property in the area affected, annexed a substantial area of the land adjacent to the town. The validity of the annexation proceedings is not questioned. Less than four months later, on August 7, 1952, petitioners filed their verified petition praying for the disconnection from the town of the greater part of the land annexed in April, 1952. Section 10–4–1, U.C.A.1953, under which the petition was filed, provides:

"Whenever a majority of the real property owners in territory within and lying upon the borders of any incorporated city or town shall file with the clerk of the district court of the county in which such territory lies a petition praying that such territory be disconnected therefrom, and such petition sets forth reasons why such territory should be disconnected from such city or town, and is accompanied with a map or plat of the territory sought to be disconnected, and designates no more than five persons who are empowered to act for such petitioners in such proceedings, the court shall cause a notice of

the filing of the same to be served upon said city or town in the same manner as a summons in a civil action, and shall also cause notice to be published for a period of ten days in some newspaper having general circulation in such city or town. Issue shall be joined and the cause tried as provided for the trial of civil causes as nearly as may be. The proper authorities of such city or town, or any person interested in the subject-matter of said petition, may appear and contest the granting of the same."

The petition alleged in addition to the allegations required under the statute that petitioners comprised a majority of the real property owners of the territory sought to be disconnected and the court, as required by the above quoted statute ordered that notice of the filing of the petition be served on the town and published, and ordered that a hearing on the petition be held on September 23, 1952. On August 28, 1952, the town filed its answer, in which it denied specifically that petitioners comprised a majority of the real property owners of the property sought to be disconnected.

On December 18, the day the case was finally called for hearing, fifteen unverified motions for leave to intervene as petitioners were filed. Over the town's objection the court granted the motions. The court found that the petition as filed was not signed by the required majority of real property owners but that counting the interveners, as the court did, a clear majority was pro-vided. This determination by the trial court appellant assigns as error. There are only two questions involved in this appeal, name-ly (1) Did the requisite number of real property owners join in the petition for disconnection, and (2) If the petition was sufficient did justice and equity require the disconnection?

The first question to be decided then is: Should the interveners have been counted in determining whether a majority of the real property owners of the area sought to be disconnected were petitioners in fact? The determination of this question requires an interpretation of Section 10-4-1, U.C.A. 1953, above set out which must be construed together with the section that follows it, Section 10-4-2, U.C.A.1953, which pro-vides:

"If the court finds that the petition was signed by a majority of the real property owners of the territory con-cerned and that the allegations of the petition are true and that justice and equity require that such territory or any part thereof should be disconnected from such city or town, it shall appoint three disinterested persons as commis-sioners to adjust the terms upon which such part shall be so severed as to any liabilities of such city or town that have accrued during the connection of such part with the corporation, and as to the mutual property rights of the city or town and the territory to be detached."

Appellants contend that the court acquired no jurisdiction to grant the disconnection because no sufficient petition was filed; that the sufficiency of the petition must be determined as of the time when filed and not at the time when the case is heard. That since the petition filed was not signed by a majority of the real property owners of the area sought to be disconnected, it was not a sufficient petition and the court acquired no jurisdiction to do anything except dismiss the action when it determined that the petition, *when filed*, did not meet the requirement of the statute.

Respondents contend that the court acquired jurisdiction to determine the question of disconnection; that the question of the sufficiency of the petition was an issue for the court's determination, that the time for making that determination was when the case was heard. We have not found a case involving the exact point here presented nor have counsel called any to our attention. In fact, it is conceded that counsel have been unable to find one. However, counsel for the respective parties cite and rely on many cases involving principles which they contend are similar and properly controlling here. Many have been cited by respondents holding that names may be withdrawn from petitions before being acted upon and may thereby divest authority which seemed to have been sufficient before.[1] On the other hand many cases are cited by appellant holding that the absence of the required percentage fixed by a statute or ordinance to authorize the court to act prevents the court from acquiring jurisdiction.

Counsel for respondents urge that even though less than a majority of the property owners in the area signed and filed the petition, nevertheless through intervention they became petitioners as of the time the petition was filed, and qualified the court to enter the order; they insist that under our rules of civil procedure parties may be added or dropped and may intervene. Let it be conceded that if the court had been vested with jurisdiction to order the area disconnected then the intervening parties, if otherwise qualified, could be considered as parties. But, if the court had not been vested with the jurisdiction—in fact lacked jurisdiction—because the petition was not signed and filed by a majority, we opine that permitting the intervention could not confer jurisdiction.[2] It was held in the case of Schmoll Fils, Inc., v. The Fernglen, D.C., 85 F.Supp. 578, 579, that, "An existing suit within the Court's jurisdiction is a pre-

---

1. Halgren v. Welling, 91 Utah 16, 63 P.2d 550.
2. In Barron & Holtzoff, Federal Practice and Procedure, Vol. 1, page 223, Sec. 593, it is said: "An intervener takes the case as he finds it and to all intents and purposes is regarded as an original party, except that he cannot question the venue or jurisdiction of his person. However intervention presupposes the pendency of an action in a court of competent jurisdiction and intervention will not be allowed to create jurisdiction where none existed before."

requisite to intervention. Intervention cannot give life to a lawsuit which does not actually exist, nor can it create jurisdiction where no jurisdiction exists."

Respondents, in support of their position that the sufficiency of the petition as to the percentage of property owners must be determined by the court at the time the court hears the case, state that if a petition were filed, signed by more than a majority of the real property owners, but upon the trial and before the introduction of any evidence some of the petitioners by appropriate motions withdrew their names, and by order were dropped as petitioners, and the court found that there were not left a majority of the real property owners, the court would be required to find against disconnection because there were not a majority in support of the petition.

We need not analyze this thesis nor need we give our opinion as to whether the court would be obliged to permit the withdrawal of some of the petitioners, or what the duty of the court in the hypothetical case would be. It is sufficient for us to observe that that is not the case here presented. Here unlike the supposed case the petition was not the petition of the majority of the real property owners of the area when filed.

We believe that it was the duty of the trial court, when the petition was filed to examine it and hear evidence as to the qualifications of the signers—were they property owners within the area proposed to be disconnected. The court had the further preliminary duty of ascertaining the total number of property owners in the area, and of determining if the signers of the petition comprised a majority of the owners of real property within the area sought to be disconnected. Had the court found that the petition was signed by a majority of the real property owners of the territory in question, then the court, having found the prerequisite to hearing the matter on its merits, would have been authorized to determine if justice and equity required that such territory be disconnected from the town.

It was early held by this court that the power given to the district court to disconnect portions of a city or town does not confer on the court legislative power, but the legislature may make laws to take effect upon the ascertainment of certain facts and conditions.[3] This court in a later case said:[4]

"In view of the fact, however, that the changing of the territorial limits of a city is primarily a legislative function, courts are bound to confine the exercise of the power conferred upon them by the Legislature within the expressed or necessarily implied language of the act so conferring such power."

The filing of the petition vested the court with jurisdiction to take evidence and determine if the prerequisite conditions neces-

3. Young v. Salt Lake City, 24 Utah 321, 330, 67 P. 1066.

4. Plutus Min. Co. v. Orme, 76 Utah 286, 289 P. 132, 135.

sary to give the court jurisdiction to consider the merits of the question had been met.

The prerequisite was the *signing and filing* of a petition by a majority of the real property owners in the territory within and lying upon the borders of the town, sought to be disconnected.

In the case of Young v. Salt Lake City, supra, this court said [24 Utah 321, 67 P. 1067]: *"A majority of the owners of land must petition."* Petitioners alleged in their petition that the petitioners comprised a majority of the owners of the real property described in the petition. The allegation that the petitioners comprise a majority does not on its face show the total number of property owners nor the identity of the property owners other than petitioners.

Suppose petitioners had alleged the following: That your petitioners are thirty of the owners of the real property described herein. That the total number of real property owners are 87; that your petitioners represent to the court and allege upon information and belief that at least 14 more of the said owners are interested in being disconnected and will, on or before the day the case is set for hearing, either by asking leave to sign the petition or by motion to intervene, ask leave to become plaintiffs and petitioners.

Would it be contended that the court had acquired jurisdiction to order service of notice of the filing of petition on the defendant town and to order notice of the filing published for a period of ten days? The defendant town could have filed a motion to dismiss under Rule 12(b) (6), Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.

Suppose petitioners alleged that they comprised 30% of the owners of the real property described in the petition. Would it be argued that under such allegation the court acquired any jurisdiction to cause notice of the filing served on the town or published, and to hear the case on its merits?

This court in Young v. Salt Lake City, supra, 24 Utah at pages 330, 331, 67 P. at page 1067 said:

"The facts required to be shown, under the statute, must be passed upon by the court. *A majority of the owners of land must petition.* * * * It provides that certain territory, *under certain conditions*, may be severed from an incorporated city, if the court considers the facts justify such severance. * * * The court gives the law effect after it has determined judicially the *existence of the requisites as fixed by the legislature.* * * * The statute names the conditions under which land lying on the borders of a city may be detached, and authorizes the court to determine whether such conditions exist, and whether, under all the facts, justice and equity require the land to be detached." (Emphasis ours.)

Before the court can pass upon the justice and equity of the matter it must first determine *judicially* the *existence* of the *requisites* fixed by the legislature.

Although considered by the court as one of the issues, the court is still required to *determine judicially* the existence of the requisites as fixed by the legislature, before it can determine if justice and equity justify segregation.

Thus it is seen that the *initial exercise of judicial power* which is delegated to the court in this instance is to determine whether the conditions prescribed by the statute do exist and if they do, then whether under all the facts, justice and equity require the land to be disconnected. This latter power of the court to act, having found that the conditions prescribed by the statute do exist, is its ultimate jurisdiction to determine whether equity and justice warrant the disconnection.

We are of the opinion that the trial court never acquired jurisdiction to make the order of disconnection.

As we interpret the above quoted statute, the Legislature intended to require as a condition precedent to the right of the court to make an order of disconnection, that a petition praying for disconnection be *signed and filed* by a majority of the real property owners in the territory affected; that if said petition is not signed and filed by a majority of the owners, the court is impotent to act and no grafting on the petition thereafter, either by physically signing it or by motion to be allowed to intervene and become petitioners, can breathe life into the still-born petition so as to authorize the court to do more than dismiss the petition. To interpret the statute permitting disconnection otherwise would be to give no vitality or significance to several of its provisions. Not alone are the petitioners and city or town interested in any contemplated disconnection, but all of the other owners of property within the corporate limits of the city or town are concerned. Although they are not required to be made parties as the statute requires as to the city or town, nevertheless the court must cause notice of the filing of the petition to be published for a period of ten days in some newspaper having general circulation in the city or town. The only apparent reason for such publication is to notify the other property owners that a move is afoot to disconnect part of the city or town, which disconnection might well impair the town's ability to function as fully as otherwise. By examining the petition on file the remaining owners would be advised who is seeking to divide the town and would be in a position to know what counter-measures may be taken to preserve it intact. This they may not know if the court allows interveners to add their names to those of the petitioners on the very day the case comes on for hearing by the court.

To sustain respondents' position would be tantamount to saying that the notice such

196

publication gives *is immaterial*, that it is quite all right if 14 or 15 other people are allowed to join petitioners although they never signed the petition and never verified the same and although their names were never published.

Nor can we ignore what we construe to be a solemn prerequisite to the court's right to enter an order of disconnection. Section 10–4–2, U.C.A.1953 conditions the court's power thus:

> "If the court finds that the *petition was signed* by a majority of the real property owners of the territory concerned and that the allegations of the petition are true and that justice and equity require * * *."

By the language of that section it would seem that the Legislature conditioned the court's power to act further, upon its finding that the petition was *signed by a majority*. It can not be inferred that the Legislature intended that other real property owners who had never signed the petition, whose names had not appeared thereon, could by the legal device of a motion to intervene be intended by the Legislature as *signers of the petition*. The word *"signed"* as used here is not a technical word. We believe the Legislature intended to mean what it usually is understood to mean, to wit—subscribed with pen in hand. The judgment of the trial court is reversed. Costs to appellant.

McDONOUGH, C. J., and CROCKETT, HENRIOD and WADE, JJ., concur.