MARIEMONT CORPORATION, et al.; Keenan Roylance, Deanna Stookey, Douglas W. Darrington, Jerry Hurst, and Bill Breeman; W.C.J.D. Ltd.; Boyer Life Center Associates, Ltd., et al.; and IHC Hospitals, Inc., et al., Plaintiffs and Appellees,

v.

WHITE CITY WATER IMPROVEMENT DISTRICT, Defendant and Appellant.

Sandy City, Intervenor in favor of Plaintiffs.

Garry True, et al., Interested Parties against Defendant.

No. 960369.

Supreme Court of Utah.

April 21, 1998.

Lee E. Kapaloski, Paul D. Veasy, Salt Lake City, for Sandy City.

Marc T. Wangsgard, Salt Lake City, for Keenan Roylance.

Paul H. Ashton, Salt Lake City, for defendant.

Shawn D. Turner, Salt Lake City, for Garry True.

ZIMMERMAN, Justice:

White City Water Improvement District and several other interested individuals (collectively, "the Water District") bring this interlocutory appeal from a ruling of the Third District Court. The district court ruled that sections 17A–2–334 and –335 of the Utah Code ("the withdrawal statute"), permitting withdrawal from a special improvement district upon petition by "a majority of the real property owners" of a territory, should be interpreted according to their plain language. The court then held that to determine whether a majority of real property owners have petitioned for withdrawal, the total number of property owners of record in the territory, including all co-owners of property, as of the date the petitions were filed should be compared with the number of those owners who have signed the petitions. The district court also ruled that the sufficiency of the petitions for withdrawal should be judged as of the date of filing and that no amendments to the petitions through addition, deletion, or reinstatement of names should be permitted after that date.

The Water District asserts that the district court erred and claims that in determining whether a "majority of the real property owners" have petitioned for withdrawal, all co-owners of a piece of property must sign the withdrawal petition in order for the signature of any one owner of that piece of property to be valid. The Water District also asserts that the district court should have allowed the removal of names from the withdrawal petitions after their filing but that the addition of names should not be permitted. We have jurisdiction to hear this case pursuant to section 78–2–2(3)(j) of the Code. We affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

We briefly review the facts before turning to the standard of review and our analysis. The Water District was created in December of 1993, pursuant to sections 17A–2–301 to –

339 of the Code ("the Special Improvement District Act" or "Act"). It was organized in part to purchase a private corporation, White City Water Company, Inc., which was then providing water service to parts of unincorporated Salt Lake County and parts of incorporated Sandy City.

In October of 1994, a group of residents of Sandy City ("the Roylance petitioners"), filed petitions for withdrawal from the Water District pursuant to section 17A–2–334. They wished to receive water service from Sandy City rather than from the Water District. The Roylance petitioners included with their withdrawal petitions pleadings stating that a majority of real property owners within the affected territories had signed the petitions. Thereafter, the Water District mailed a newsletter to all property owners within its boundaries stating that it had received numerous inquiries from individuals who had signed petitions for withdrawal as to how their names could be removed from those petitions. Included with that newsletter was a form that property owners could sign and return, requesting the removal of their names from the petitions. The Water District then filed the returned requests for removal of names with the district court.

The Water District's action precipitated the filing of a motion in limine by the Roylance petitioners on November 21, 1995, in which they asked the court to address two issues: first, the meaning of the phrase "majority of the real property owners" as used in sections 17A–2–334 and –335 of the Code; and second, whether the petitions for withdrawal could be amended after filing through the addition, deletion, or reinstatement of names. It is the district court's decision on those two issues that we have before us.

◼ We begin by determining the correct standard of review. The first issue, the meaning of the phrase "a majority of the real property owners" is a question of statutory construction. Because it is our role as an appellate court to define what the law is, and because the operation of statutes must be uniform throughout the state, we accord the district court no deference and review its ruling for correctness. *See MacKay v. Har-*

*dy,* 896 P.2d 626, 630–31 (Utah 1995); *State v. Pena,* 869 P.2d 932, 936–37 (Utah 1994). The second issue, whether amendments to the withdrawal petitions should be permitted after the date of filing, is also a question of statutory construction to which the same standard of review applies.

Turning to the first issue, sections 17A–2–334 and –335 allow withdrawal from a special improvement district upon petition by a "majority of the real property owners" in a territory seeking withdrawal.[1] The Water District argues that the phrase "a majority of the real property owners" as used in both sections is ambiguous and that to give it meaning the court should look to other parts of the Special Improvement District Act, specifically, section 17A–2–304(3)(g)(i).

Section 17A–2–304 deals with protests to the creation of a special improvement district and states in relevant part:

> (3)(b) Any taxpayer within the district may, on or before the date of the public hearing, protest against the establishment of the district by filing a signed written protest with the county clerk of the county in which the district is located.

> (c) If, at or before the time fixed in the notice, a written protest is filed that is signed by more than 25% of the real property owners within the proposed district, ... the district may not be established. . . .

> (g)(i) Where title to any real property in the district is held in the name of more than one person, all of the persons holding the title to the property must join in the signing of the written protest.

Utah Code Ann. § 17A–2–304 (emphasis added). The Water District argues that withdrawal and protest should be seen as analogous and that we should read the limitation of section –304(3)(g)(i) into sections –334 and –335. In other words, for a withdrawal petition to be valid, all persons holding title to a piece of property must join in the signing of that petition before the signature of any co-owner can be counted as that of a "real property owner." For the reasons set forth below, we agree and reverse the district court.

In construing a statute, our primary purpose " 'is to give effect to the intent of the legislature in light of the purpose the statute was meant to achieve.' " *Sullivan v. Scoular Grain Co. of Utah,* 853 P.2d 877, 880 (Utah 1993) (quoting *Reeves v. Gentile,* 813 P.2d 111, 115 (Utah 1991)). When examining a statute, we first look to its plain language. We need not go beyond the plain language unless we find that language ambiguous. *See In Re Worthen,* 926 P.2d 853, 866 (Utah 1996); *Schurtz v. BMW of North Am., Inc.,* 814 P.2d 1108, 1112 (Utah 1991). However, if we do find the language to be ambiguous, "we then seek guidance from the legislative

---

1. Section 17A–2–334 states in full:

> Whenever a majority of the real property owners in a territory within the boundaries of any improvement district operating or created under authority of this part shall file with the clerk of the district court of the county in which the territory lies, a petition requesting that the territory be withdrawn from the improvement district and the petition sets forth reasons why the territory should be withdrawn from the improvement district and is accompanied with a map or plat of the territory sought to be withdrawn and designating no more than five persons who are empowered to act for the petitioners in the proceedings, the court shall cause a notice of the filing to be served upon the board of trustees of the improvement district in the same manner as a summons in a civil action and shall also cause notice to be published for a period of ten days in a newspaper of general circulation in the improvement district. The issues shall be joined and the cause tried as provided for by the Utah Rules of Civil Procedure in the trial of civil causes.

The proper authorities of the improvement district or any person interested in the subject matter of the petition may appear and contest the granting of the petition.

Section 17A–2–335 states:

> If the court finds that the petition was signed by a majority of the real property owners of the territory concerned and that the allegations of the petition are true and that the territory lies within the boundaries of an incorporated city or town operating or furnishing similar services as the improvement district from which the territory would be withdrawn and that the improvement district was not, at the date of the filing of the petition, furnishing service to the territory sought to be withdrawn, the court shall appoint three disinterested persons as commissioners to fix the severance and withdrawal terms as to any liabilities of the improvement district that have been incurred during the connection of the territory with the improvement district and as to the mutual property rights of the improvement district and the territory to be withdrawn.

history and relevant policy considerations." *In Re Worthen,* 926 P.2d at 866 (citing *World Peace Movement of Am. v. Newspaper Agency Corp.,* 879 P.2d 253, 257–58 (Utah 1994)). Furthermore, "if doubt or uncertainty exists as to the meaning or application of an act's provisions, the court should analyze the act in its entirety and 'harmonize its provisions in accordance with the legislative intent and purpose.'" *Beynon v. St. George–Dixie Lodge # 1743,* 854 P.2d 513, 518 (Utah 1993) (quoting *Osuala v. Aetna Life & Casualty,* 608 P.2d 242, 243 (Utah 1980)). That is, "[t]he meaning of a part of an act should harmonize with the purpose of the whole act. Separate parts of an act should not be construed in isolation from the rest of the act." *Jensen v. Intermountain Health Care, Inc.,* 679 P.2d 903, 906 (Utah 1984) (citations omitted).

█ First, we cannot agree with the district court that the meaning of the phrase "majority of the real property owners" is plain and unambiguous. While the meaning of "majority" clearly means more than fifty percent, what constitutes a "real property owner" is not so apparent. "Real property owner" could mean any person with any interest in a piece of real property, or it could mean a group of individuals jointly holding the complete interest in a piece of property. Thus, the statute does not make clear who constitutes an "owner" with respect to jointly held property for the purposes of the Act.

Next, because the withdrawal statute is ambiguous, we look to the legislative history and seek to harmonize the statute's meaning with the Special Improvement District Act as a whole. The withdrawal provisions were passed in 1969 and originally appeared as sections 17–6–28 and –29 of the Code. In 1990, the sections were renumbered and included in the Act under their present section numbers. Since the legislature determined that the withdrawal provisions belong in the Act, those provisions should be interpreted consistently with the rest of the Act.

According to section –304(3)(c), an improvement district cannot be formed if twenty-five percent of real property owners within the proposed district file a written protest. Read by itself, this section suffers from the same problem as the withdrawal statute in that the meaning of "real property owner" is equally ambiguous in this context. However, section –304(3)(g)(i) expressly states that all persons jointly holding title to property must join in the signing of the protest. Thus, while –304(3)(g)(i) does not explicitly define the term "real property owner," this provision makes plain that the legislature wanted all owners of interests in a parcel to join together before any could take an action that would have potentially dramatic consequences for the entire parcel.

In light of the foregoing, section –304(3) operates as follows when determining whether twenty-five percent of real property owners have filed protests. First, the valid protests are separated from the invalid ones. A valid protest is one that in addition to satisfying all other requirements contains the signatures of all owners of the protesting property. The number of signatures on these valid protests is determined, and this sum becomes the numerator of the equation, the denominator of which is the total number of real property owners within the district, including all holders of jointly held property. The result must be twenty-five percent or more.

We conclude that the requirements of section –304(3)(g)(i) should be imported into the operation of sections 17A–2–334 and –335, the withdrawal portion of the Act, to make it operate similarly. There is sound reason for this. Recognized principles of statutory construction suggest that we harmonize the meaning of part of an act with the purpose of the act as a whole. The filing of a sufficient number of protests will prevent the special improvement district from being formed. However, if an insufficient number of protests are filed and the district is in fact established, the withdrawal statute provides a means by which particular property owners within the district can remove their property from it. Thus, the ultimate result of both the protest and the withdrawal provisions is that a piece of property either is or is not included in a special improvement district. Because the protest provisions and the withdrawal statute are related in this manner, it

is important that we interpret them consistently.

Furthermore, because withdrawal, like protest, may have consequences not just for any one owner of a partial interest in real property, but for *all* owners of interests in that property, it stands to reason that both actions should require unity of action by owners. Therefore, where a jointly owned piece of property is involved, all property owners must sign the withdrawal petition for any signature of an owner of that piece of property to be valid. As with protests, the number of valid signatures is then to be compared with the total number of real property owners within the particular territory, including all owners of jointly held property. If there is a majority, withdrawal is effected.[2]

■ We now turn to the second issue: whether names can be added to or removed from the withdrawal petitions after they have been filed and, if so, until what point these changes can be made. This is not a situation where we must determine the correct interpretation of ambiguous language. Rather, since the withdrawal statute fails to address this issue, we must determine the best rule of law to ensure that the statute is applied uniformly. *See Pena,* 869 P.2d at 936.

■ The Water District argues that individuals filing petitions for withdrawal must be given the opportunity to withdraw those petitions until the date of trial. The Roylance petitioners respond that if removal of names is permitted, the addition or reinstatement of names should also be permitted. For the reasons set forth below, we agree with the district court that no amendments to the withdrawal petitions should be permitted after the date of filing, whether by way of addition, deletion, or reinstatement of names.

Initially, the case most relevant to this issue is *Howard v. Town of North Salt Lake,* 3 Utah 2d 189, 281 P.2d 216 (1955). There, a petition for disconnection from a town was filed. The then-existing disconnection statute was virtually identical to the current withdrawal statute.[3] In *Howard,* we held that the trial court initially had jurisdiction only to determine whether a majority of real property owners petitioned for disconnection *as of the time of the filing of the petition. See id.* at 220, 281 P.2d 216. If it determined that this prerequisite had not been met, it could only dismiss the action for lack of jurisdiction. *See id.* It could do no more.

We take a similar view of the district court's power under section 17A–2–335. By the language of section 17A–2–335, the legislature conditioned the court's power to act further upon its finding that a majority of real property owners signed the petition. To use the language of the court in *Howard,* if the "petition is not signed and filed by a

---

2. The Water District argues that the definition of the term "territory" as used in the withdrawal statute also needs to be addressed. However, this issue is not properly before us at this time.

3. *Compare* Utah Code Ann. §§ 10–4–1 & –2 (1953) *with* Utah Code Ann. §§ 17A–2–334 & –335. Section 10–4–1 stated:

Whenever a majority of the real property owners in territory within and lying upon the borders of any incorporated city or town shall file with the clerk of the district court of the county in which such territory lies a petition praying that such territory should be disconnected therefrom, and such petition sets forth reasons why such territory should be disconnected from such city or town, and is accompanied with a map or plat of the territory sought to be disconnected, and designates no more than five persons who are empowered to act for such petitioners in such proceedings, the court shall cause a notice of the filing of the same to be served upon said city or town in the same manner as a summons in a civil

action, and shall also cause notice to be published for a period of ten days in some newspaper having general circulation in such city or town. Issues shall be joined and the cause tried as provided for the trial of civil causes as nearly as may be. The proper authorities of such city or town, or any person interested in the subject matter of said petition, may appear and contest the granting of the same.

Section 10–4–2 stated:

If the court finds that the petition was signed by a majority of the real property owners of the territory concerned and that the allegations of the petition are true and that justice and equity require that such territory or any part thereof should be disconnected from such city or town, it shall appoint three disinterested persons as commissioners to adjust the terms upon which such part shall be so severed as to any liabilities of such city or town that have accrued during the connection of such part with the corporation, and as to the mutual property rights of the city or town and the territory to be detached.

majority of the owners, the court is impotent to act and no grafting on the petition thereafter, either by physically signing it or by motion to be allowed to intervene and become petitioners, can breathe life into the still-born petition so as to authorize the court to do more than dismiss the petition." *Id.* Therefore, we hold that where the initial withdrawal petition is insufficient to confer jurisdiction, no names can be added to that petition after it is filed.

The more difficult issue, and the one which the *Howard* court avoided as hypothetical, is whether the court is obliged to permit the withdrawal of signatures after jurisdiction is established and, if withdrawal is permitted, whether intervention should also be permitted so as to give both parties an equal opportunity to defeat or maintain jurisdiction. We conclude that no such amendments should be permitted.

The Water District cites *Jensen v. Bountiful City,* 20 Utah 2d 159, 435 P.2d 284 (1967), and *Szatkowski v. Bountiful City,* 906 P.2d 902 (Utah Ct.App.1995), for the proposition that the removal of names from the withdrawal petitions should be permitted. In *Jensen,* this court held that because there was no statutory prohibition against the withdrawal of signatures from a petition for annexation, such withdrawal is permitted until the passage of the annexation ordinance. *See Jensen,* 435 P.2d at 286. Then, in *Szatkowski,* the court of appeals also stated with respect to annexation petitions that "if the *Jensen* court could find no statutory interdiction against allowing signatures to be withdrawn, there is similarly no statutory interdiction against allowing signatures to be reinstated." *Szatkowski,* 906 P.2d at 907.

These cases, however, are inapposite. While the withdrawal statute does not contain any statutory interdiction against the removal, addition, or reinstatement of names, the logic of *Jensen* is not persuasive in this context. Annexation to a municipality and withdrawal from a special improvement district are fundamentally different processes. Whereas annexation is a legislative proceeding, ultimately decided by vote of a municipal governing body, *see* Utah Code Ann. § 10–2–416, withdrawal is a judicial proceeding which takes place in the district court. Permitting parties to add, delete, and reinstate names, thereby continually adjusting the parties to the litigation, would impose enormous burdens on the court. To permit the parties to make amendments would be to invite confusion as to who is a party to the withdrawal proceeding and whether the district court is still vested with jurisdiction at any given time. This alone is reason enough not to permit amendment of the petitions.

Furthermore, were we to decide that any amendments to the withdrawal petitions should be permitted, we would also need to select some cut-off date after which no amendment would be allowed and at which point both the jurisdiction of the trial court and the parties to the litigation would become fixed. It is one thing for this court to interpret an ambiguous statute and attempt to harmonize the various provisions of an act, but it is another for this court to fashion a statutory rule out of whole cloth without having any idea of the legislature's intentions. Therefore, in the absence of any legislative direction, we decide that amendment of the withdrawal petitions, whether by addition, deletion, or reinstatement of names, may not be permitted after the date of filing. If the legislature wishes otherwise, it is free to amend the statute.

To summarize, we affirm the district court's ruling as to the amendment of the petitions and remand to the district court for consideration of whether petitions were filed by a majority of the real property owners in accordance with the procedure set forth in this opinion.

HOWE, C.J., DURHAM, Associate C.J., and RUSSON, J., concur in Justice ZIMMERMAN's opinion.

STEWART, J., dissents.