**HICKS, Plaintiff, v. CAIN et, Defendant.**

Common Pleas Court, Franklin County.

No. 195851. Decided April 24, 1957.

Morton Y. Reeves, for plaintiff.

Alba L. Whiteside, Asst. City Atty., Harrison W. Smith, Jr., Special Counsel, for defendant.

## OPINION

By LEACH, J.

This is an action to enjoin the City Clerk of the City of Columbus, Ohio, from forwarding to the City Council the transcript of the proceedings of the Board of County Commissioners, approving the annexation to said City of approximately 153 acres in Clinton Township. Plaintiff is an adult freeholder, residing in the territory in question.

The sole claim of the plaintiff is that, at the time the Board approved the annexation by its order of May 29, 1956, it lacked jurisdiction to make such order, plaintiff claiming that a sufficient number of adult resident freeholders had withdrawn their names from the petition, filed with the Board on March 13, 1956, to reduce the number thereon to less than a majority at that time. If, therefore, the Board had jurisdiction to make such order, the prayer of the petition must be denied, as we are not concerned with questions as to the accuracy or inaccuracy of the boundaries, whether or not such annexation is "unreasonably large or small" or whether or not it is "right, just, or equitable," within the purview of §707.11 R. C. We believe it clear, however, that a lack of jurisdiction, if it did exist, is an "error" within the scope of the language of §707.11 R. C., which also authorizes the filing of a petition "setting forth the errors complained of."

It is the contention of the defendant (1) that plaintiff is not a "person interested" within the purview of §709.07 R. C., which authorizes "any person interested" to present a petition to the Court of Common Pleas to enjoin further proceedings, (2) that the evidence before the Court herein does not establish that in fact the petition did not contain the names of a majority of the adult resident freeholders at the

time of the Board's order of May 29, 1956, it being asserted that there is no evidence as to the total number of adult resident freeholders in the area or the number who had withdrawn their names, and (3) that the Board had jurisdiction to make the order of May 29, 1956, even if the petition, at such time, by virtue of the withdrawals, contained signatures of less than a majority of the adult resident freeholders.

It is conceded by plaintiff that the petition, when filed with the Board on March 13, 1956, contained signatures of more than a majority of such freeholders.

**I**

The first question presented is whether plaintiff has the legal capacity to maintain this action. This is a proceeding under the provisions of §709.07 R. C., and related sections. Under this statute, only a "person interested" is a proper party plaintiff.

As heretofore stated, the plaintiff is an adult resident freeholder of the area in question. Defendant asserts that such status in and of itself does not qualify plaintiff as an "interested person"; that plaintiff must also allege and prove that he would be irreparably injured by the annexation itself in the sense of having his legal rights substantially affected thereby; that the only effect upon plaintiff of annexation shown by the evidence is the fact that plaintiff would become subject to the Columbus Income Tax, but that the amount of plaintiff's earnings is not shown by the evidence and thus no "irreparable injury" is shown; and that at most the annexation would affect only plaintiff's political as opposed to "legal rights" and that plaintiff is "not interested in the juristic sense."

The various cases cited by the defendant in support of such contention, in our opinion, do not support such claim. In Roush v. Barthalow, 105 N. E. 2d 85, none of the plaintiffs were adult resident freeholders within the area. The same is true as to Markos v. Cain, No. 191,704, CP 78 Abs 569, OA 73 Abs 20, and Branson v. Cain, No. 194,081, CP 76 Abs 21. In Dunford v. Cain, No. 194,082, the basis of the ruling of the Court as to the question of the sufficiency of signatures on the petition was failure of proof.

In McCord v. Cain, No. 194,188, Van Arsdale v. Cain, No. 194,473, Post v. Cain, No. 194,741, and Watkins v. Cain, No. 194,309, the plaintiffs were adult resident freeholders and the opinions of the Court in such cases do contain language to the effect that the plaintiffs had not established "any interest" to entitle them to the relief sought. In McClintock v. Cain, No. 194,388, CP 74 Abs 554 two of the plaintiffs were adult resident freeholders and the rest non-residents. On the "interest" question, it will be noted that the Court separately treated and discussed the "interest" of the residents and the "interest" of the non-residents. From a detailed study of the opinions in all of such cases, it would appear that the Court therein was discussing primarily the question of the "interest" of the plaintiffs as it might relate to the question as to whether the annexation was right, just or equitable, and was saying in effect that plaintiffs must show that such was not right, just or equitable, not simply in a general sense, but in the sense that it unjustly or inequitably affected his rights.

In other words, plaintiff could not prevail by a showing that the annexation would be unjust or inequitable as it might affect the rights of third persons, so long as his own rights were not unjustly or inequitably affected. This, in effect, was the holding in the case of Roush v. Barthalow, supra, and this we believe was the intent of the language employed in the McCord case, the Van Arsdale case, the Post case, the Watkins case and the McClintock case.

In any event, none of such cases are clear cut holdings that an adult resident freeholder is not a "person interested" in the question of whether the Board of County Commissioners had jurisdiction to approve a petition for annexation, and if they were, we would have to respectfully disagree. In this connection, it must be remembered that if we were to accept defendant's contention in this regard, it would mean that a Board could approve a petition for annexation even though it obviously did not and never had contained the signatures of a majority of the adult resident freeholders in the area, and such a freeholder would have absolutely no standing in court to even assert the illegality of the act, unless the Court determined first that, independently of the illegality of the act of the Board, the plaintiff had suffered irreparable damage in the sense that the annexation unjustly or inequitably affected some "legal right" of the plaintiff.

By virtue of the provisions of §709.02 R. C., the Board is powerless to act except upon the filing with it of a petition "signed by a majority of the adult freeholders residing in such territory." Whether the General Assembly was wise in limiting the petition only to the option of adult resident freeholders, is of no concern to this Court. This it did, however, apparently on the basis that only those who would be affected personally by virtue of being residents and also affected as to their real property by virtue of being freeholders, should have the right to initiate such annexation proceedings, if they also were adults. We think it clearly follows, as a matter of legislative intent, that an adult resident freeholder in the area sought to be annexed, by virtue of such status alone, is a "person interested" in the question of whether a petition for annexation contains sufficient signatures of adult resident freeholders to bestow jurisdiction on the Board of County Commissioners to approve the same, and if such lack of jurisdiction be alleged and proved by such a freeholder, he would be entitled to an injunction enjoining further proceedings under the provisions of §709.07 et seq, R. C.

**II**

The order of the Board of May 29, 1956, as shown by the transcript admitted into evidence, recited:

"* * * that said petition is signed by a majority of the adult freeholders residing on the territory sought to be annexed; and, although affidavits were filed by six (6) resident adult freeholders who had signed the petition, requesting the withdrawal of their names from the petition, and these withdrawals reduced below a majority the petitioners at the present time desiring annexation, the Board finds that this territory is completely surrounded by the City of Columbus, and that it is not contiguous to any township excepting Montgomery, which is co-extensive with the City of Columbus, and a governmental problem for

this area now exists which will become worse in the near future; the territory to be annexed is not too large or too small and it is right and proper that said petition should be granted; * * *"

The petition, filed March 13, 1956, also a part of the transcript, contained 18 signatures of persons representing themselves to be a "majority of the adult resident freeholders" in such territory. The transcript also contains 6 papers which appear to be signed by 6 of the 18 persons whose names appear on the petition requesting and directing that their names be withdrawn therefrom. It is true, as contended by the defendant, that there is no evidence before the Court as to the total number of adult resident freeholders within the area. Independently of the finding of the Board that "these withdrawals reduced below a majority the petitioners at the present time desiring annexation," it is clear that no independent evidence was introduced by which the Court could determine whether or not, as a matter of fact, the 12 signatures not withdrawn would constitute a majority. Thus we are presented squarely with the question of whether such finding of the Board, as contained in its official order, is proof of such fact, in the absence of evidence to the contrary. We conclude that it is. Had the Board found to the contrary, we likewise would be obligated to accept such finding in the absence of evidence to the contrary. In our opinion, any finding of fact by the Board, as contained in an official order, is prima facie evidence of such fact and the burden of proof is on the party asserting to the contrary to establish his assertion. No attempt was made by the defendant to do so.

### III

We turn now to the most complex problem presented herein. Did the fact that "these withdrawals reduced below a majority the petitioners at the present time desiring annexation" take away the **jurisdiction** of the Board of County Commissioners to approve annexation on May 29, 1956, it being conceded that the petition as originally filed on March 13, 1956, contained signatures of a majority of such adult resident freeholders?

This identical question was presented to Judge Gessaman in **Lamneck v. Cain**, No. 191,454, **78 Abs** , OA 73 Abs 20. In his decision of May 28, 1955, he stated:

"In this connection, however, it is also contended by the plaintiff that several signers withdrew their signatures from the petition so that when the Board acted on November 5, 1954, there was no longer a majority of signers on the petition. These withdrawals, however, did not divest the Board of County Commissioners of the jurisdiction which vested on May 11, 1954, when the petition to annex was filed. In the case of **Grinnell et al v. Adams et al**, 34 Oh St 44, the following statement found on page 45 of the opinion is pertinent:

" 'The filing of such petition, the giving of certain notice, and the execution of a bond to pay the expenses, in case the application shall fail, confer upon the county commissioners power to act in the premises, and the only question now before us is, after jurisdiction is thus conferred and assumed by the commissioners, is their power to proceed

defeated by all or any number of such petitioners subsequently remonstrating against the prayer of the petition being granted?

" 'We are unanimous in the opinion that this question must be answered in the negative.'

"To the same effect is the statement of the Court of Appeals in the case of Schulte et al yv. Flick, Aud. et al, 89 Oh Ap 252, found at page 254 of the opinion:

" 'Under this provision, the most that is required on a petition for annexation is a finding that the petition was signed by the requisite number, that is, a majority. The majority at the time was subscribed as required to initiate the proceeding. Any subsequent change would be important only in the determination of the county commissioners as to whether it would be "right that the prayer of the petition be granted." '

"Furthermore, the affidavits of withdrawal apparently were not filed with the Board of County Commissioners until November 5, 1954. These affidavits are on three sheets of paper. One was acknowledged on November 3, 1954, and the other two were acknowledged on November 4, 1954."

On September 25, 1955, the Common Pleas Court of Ashtabula County in the case of Village of Lakewood v. Palmer, 136 N. E. 2d 171, held exactly to the contrary. While that case involved the question of annexation of territory of a village to an adjoining city under the provisions of §709.35 R. C., providing for application by the legislative authority of the city and "on written request of a majority of the voters of the territory of such village," instead of adult resident freeholders as here, the statute provided for the filing of such petition with the Board of County Commissioners and that "in all such proceedings, the board shall be governed by §§709.02 to 709.21, inclusive, R. C.," the same sections applicable here. The Court in the Village of Lakewood case concluded:

"That if, before final action by the Board of County Commissioners, sufficient withdrawals are filed by the original petitioners to reduce the number of petitioners to less than a majority as required by the statutes, the Commissioners have no jurisdiction to proceed, their invoked jurisdiction having been lost by virtue of the withdrawals. (Emphasis ours.)

In view of the clear conflict between the holdings in the Lamneck case and the Village of Lakewood case, we feel that a reanalysis of this question is indicated.

The Court in the Village of Lakewood case distinguished the case of Schulte v. Flick, 89 Oh Ap 252, cited in the Lamneck case, on the basis that no withdrawals were presented therein and thus the question of withdrawals was never considered. Instead, the issue presented involved a situation where subsequent to the filing of the petition, certain persons, then constituting a minority of the freeholders in such territory, so shifted their titles as to constitute themselves a majority at the time the Board approved the annexation. Read in connection with the facts to which it pertained, we agree that the language of the opinion in the Schulte case, is of no real help in deciding the issues presented herein.

The Village of Lakewood case relied upon Hays v. Jones, 27 Oh St 218; McGonnigle v. Arthur, 27 Oh St 251; Dutten v. Village of Hanover,

42 Oh St 215; State ex rel. Kahle v. Rupert, 99 Oh St 17; Board of Education of Putnam County v. Board of Education of Hartsburg Rural District, 112 Oh St 108; and State ex rel. McClain v. Village of Newton Falls, 132 Oh St 1. No reference was made therein to Grinnell v. Adams, 34 Oh St 44, cited in the Lamneck case.

It will be noted that the Village of Lakewood case held that withdrawals made before final action take away the jurisdiction to so act. In Lynn v. Supple, 166 Oh St 154 (decided February 13, 1957) it was held that in the absence of statutory provisions to the contrary, "an elector signing a referendum petition authorized by law has a right to withdraw his name at any time before official action has been taken thereon * * * although after the time within which such petition is required by law to be filed and after it actually has been filed." In State ex rel Wilson v. Board of Education of Shelby County School District, 166 Oh St 260 (decided March 27, 1957), the Per Curiam opinion stated:

"At common law the signers of a transfer petition can withdraw their signatures at any time before official action is taken on the petition. State, ex rel. Kahle v. Rupert, Aud., 99 Oh St 17, 122 N. E. 39; Lynn v. Supple, Clerk, ante, 154."

We believe it clear that the general principle of law announced in the Lynn case and the Wilson case, was not intended by the Supreme Court to apply only to referendum petitions and petitions for the transfer of territory of a school district, the latter question being involved in the Wilson case. It follows therefore, that an adult resident freeholder has a right to withdraw his name from a petition for annexation at any time before official action is taken on the petition. Such a conclusion, however, does not mean that the Board necessarily had no jurisdiction to take action on May 29, 1956. As contrasted with the decision of the Ashtabula Common Pleas Court, it will be noted that the Supreme Court in the Lynn case and the Wilson case, does not use the words "final action" but instead speaks of "official action." Under the provisions of §707.05 R. C. (made applicable to annexation procedure by the language of §709.03 R. C.) the petition must be presented to the Board at a regular meeting, and the board "shall then fix, and communicate to the agent of the petitioners the time and place for hearing the petition," the statute further providing that thereupon the agent for petitioners shall cause publication to be made in a newspaper of general circulation for a period of six weeks and shall also cause a copy of the notice to be posted in such area not less than six weeks prior to the time fixed for hearing.

As heretofore noted, the petition herein was filed on March 13, 1956. It appears from the transcript that on March 23, 1956, the Board adopted a formal order (1) directing that the petition be filed with the County Auditor (2) fixing May 29, 1956, as the date for the hearing on the petition and (3) directing the notification of the agent as to the time and place of such hearing. Thereafter, and before any withdrawals were filed with the Board or even signed by the signators, the agent caused such publication to be made and the required notice to be posted.

In the ordinary grammatical sense, there would appear to be no question but that the order of the Board of March 23, 1956, was an "official

action." It was an action taken by the Commissioners in their official capacity and was an action which they were required by law to take so long as the petition was one "required by §709.02 R. C." (§709.03 R. C.). The petition, being a condition precedent to such "official action," it would appear that the Board on March 23, 1956, did take "official action on the petition," if we are to interpret the language actually employed by the Supreme Court in the Lynn case and the Wilson case literally.

In 126 A. L. R. 1040, we find the following:

"As to just when the petition or remonstrance has been 'acted upon' the courts have not been specific. In some cases it is probable that the court had in mind **final action granting or denying the petition** or remonstrance, especially where there is no discretion in the granting or denying of the same * * *. On the other hand, it may be that the **action contemplated is the taking of some preliminary step * * *.**" (Emphasis ours.)

Thus the issue herein is reduced to the question of whether the Supreme Court, in holding in the Lynn case and the Wilson case that the signer of a petition can withdraw his signature at any time before "official action" is taken on the petition, intended by the choice of such language to include action of a preliminary nature or only final action granting or denying the petition. Not being clairvoyant, we must attempt to determine this basic question by extrinsic indicia. In this attempt, we have carefully examined not only all of the cases heretofore referred to but also **Neiswander v. Brickner, 116 Oh St 249; State, ex rel. Nicholl v. Miller, 127 Oh St 103;** and **State, ex rel. Wehr v. Bellevue, 138 Oh St 93.**

In the **Hays case, 27 Oh St 219,** pertaining to a county road improvement, it was held that the jurisdiction of the Board of County Commissioners to make the final order for the improvement was "conditioned upon the consent, at the time the **final order** is to be made, of a majority of the resident land-holders" There, however, the statute, while authorizing the initiation of a proceeding by petition of five or more land owners subject to assessment, provided:

"Upon the return of the report * * *, the commissioners shall, if in their opinion public utility requires it, enter upon their records an order that the improvement be made; * * * but such order shall not be made until a majority of the resident land-owners of the county, whose lands are reported as benefited and ought to be assessed, shall have subscribed the petition * * *."

It would appear clear that the specific language of the statute in question authorized preliminary official action on a petition of only 5 land-owners, but authorized final official action only by a petition of the majority. Thus it would not appear to have been the intent of the Court by such opinion to hold generally that jurisdiction to take final action granting or denying the prayer of a petition is divested by a withdrawal of signatures after official action thereon but before final action.

In the **McGonnigle case, 27 Oh St 251,** the Court again used the words "final order," holding that under the statute in question, the Commissioners had no power to make the final order declaring a turnpike

road a free road, where the majority of the persons whose lands would be assessed opposed the conversion of the road at that time. The statute in question, however, made the authority for such a final order dependent upon whether or not a "majority of the resident land-owners of the county, whose lands are reported as benefited, and ought to be assessed, had subscribed a petition, **and were at the time asking** the commissioners to make the order." Here again, as in the Hays case, we have an opinion employing the language "final order" but involving the specific and peculiar language of the statute in question.

In the **Grinnell case, 34 Oh St 44,** decided two years later, the statute provided that "all applications for laying out, altering, or vacating a county road * * * shall be by petition to the county commissioners, signed by at least twelve freeholders of the county residing in the vicinity." Fifteen freeholders had originally signed the petition but, prior to the final action of granting or denying the prayer of the petition, nine of such fifteen had filed a written remonstrance with the commissioners. The Court held that the "filing of the petition, the giving of certain notice and the execution of a bond to pay the expense, in case the application shall fail, confer upon the county commissioners power to act in the premises" and that such power was not defeated by the subsequent remonstrances. The opinion stated that in so holding, they did not undertake to overrule the Hays case since "That case involved the construction of a statute materially different * * *."

In our opinion the issue in the instant case cannot logically be distinguished from that in the Grinnell case. Both statutes require the initiation of proceeding by the filing of a petition signed by not less than a certain number of qualified petitioners. Each is silent as to any authority to withdraw such signatures. In the Grinnell case some official action had been taken on the petition prior to the filing of the written remonstrances, which in legal effect are the same as withdrawals. Here some official action also was so taken. In neither case had final action granting or denying the prayer of the petition been taken. Thus, we must conclude that the rule in Ohio, at least at the time of the Grinnell case, was that, in the absence of peculiar language of a statute indicating to the contrary, as in the Hays case and the McGonnigle case, jurisdiction to take final action by the granting or denying of the prayer of the petition is not lost because of withdrawals of signatures to a number less than required for filing, if such withdrawals be after some official action on such petition.

Have any of the cases decided by the Supreme Court since that time changed this basic rule, established by the Grinnell case? We conclude that they have not.

In the **Dutten case, 42 Oh St 215,** no official action had been taken by the council of the Village of Hanover on the petition prior to the withdrawal of names.

In the **Kahle case, 99 Oh St 17,** the Court held as to a referendum petition that signatures might be withdrawn "before official action has been taken thereon" by the clerk or auditor by certifying such petition to the board of deputy supervisors of elections. There, however, the statute in question did not provide, as it does here, for the taking of any

official action prior to the final action of certification and thus, of course, the question of the effect of official action.prior to final action was not under consideration.

The **Putnam County Board of Education** case, **112 Oh St 108**, is of no help in solving the question herein. There it was held that names could not be withdrawn from a remonstrance after the 30 day period in which it could be filed even though prior to any official action of the board of education thereon. The **Neiswander** case, **116 Oh St 249**, holds to the same effect and likewise is of no help.

The **Nicholl** case, **127 Oh St 103** is identical to the Kahle case and thus, there, too, the question of the effect of official action prior to final action was not under consideration. The **McClain** case, **132 Oh St 1**, likewise involved a referendum petition and thus adds nothing tending toward a solution of the problem herein. The same is true of the **Wehr case, 138 Oh St 93.**

In the recent **Lynn** case, **166 Oh St 154**, the charter provision in question provided for the filing of referendum petitions with the clerk of council and required that he "shall first ascertain the sufficiency of the petition, and if found sufficient" that the council shall then reconsider the ordinance and either repeal it or submit it to a vote of the electors. It would appear clear that under this charter provision the "final action" on the petition would be the action of the council in either repealing the ordinance or submitting it to a vote of the electors. The action of the **clerk** in ascertaining the sufficiency of the petition obviously is "official action" but not necesarily."final action" thereon. As heretofore noted, the Court in the Lynn case held that signatures might be withdrawn from the petition "before official action has been taken thereon." Did the Court actually mean "before final official action has been taken thereon"? We quote from the opinion of Taft, J. at pp. 160 and 161:

"If there are sufficient valid signatures on such a referendum petition when it is filed and at the expiration of the 30 days from the time when the ordinance was filed with the mayor, may the ordinance then go into effect somewhat retroactively merely because sufficient signatures are thereafter withdrawn therefrom **before the clerk takes official action with respect to the petition** so that the remaining number of signatures is reduced below the required 10 per cent?" (Emphasis added.)

Here we find a clear indication of the meaning of "official action" as used in the Lynn case. It has reference to the "official action" of the clerk. The Court in the Lynn case did not hold that signatures might be withdrawn after the "official action" of the clerk, and such action could be a finding that the petition is sufficient—an action which would neither grant nor deny the prayer of the petition—but instead held that such withdrawals might be made before the **clerk** takes official action.

In the **Wilson case, 166 Oh St 260**, no official action had been taken prior to the withdrawal of signatures, the answer alleging that the withdrawals were made "before any official action on the petitions was taken by the respondents," and the case being submitted to the Court on a demurrer to such answer. Here, too, therefore, the question of the effect of official action prior to final action was not under consideration.

From a detailed study of all of such cases, we conclude that the

Board herein had not lost jurisdiction to make its order of May 29, 1956, because of the withdrawal of signatures. The right to withdraw such signatures in the sense that it would affect the jurisdiction of the Board to take final action on the petition was lost when the Board took official action on the petition by its order of March 23, 1956. The withdrawals herein were all subsequent to March 23, 1956. Had they been made prior to such official action, we would conclude that the Board had lost jurisdiction.

While we recognize that the law of Ohio on this subject matter is not as clear as it perhaps should be, we are impelled to the above conclusion by the following considerations:

1. Only the Hays case, the McGonnigle case and the Grinnell case involved factual situations where the withdrawals were made between the time of some official action on the petitions and final action. The statutes considered in the Hays case and the McGonnigle case contained language clearly distinguishable from that in the instant case. The statutory language considered in the Grinnell case is the latest decision of the Supreme Court considering and deciding the question of withdrawals after official action but before final action. It has never been overruled by any later decision. Unless and until overruled, it must be accepted by a lower court.

(2) The grammatical meaning of the words "official action" or "any official action" as employed by the Supreme Court in the many cases heretofore discussed, would include the action taken by the Board in its order of March 23, 1956. In construing opinions of a higher court on the question of the effect of such decisions as a matter of stare decisis, we believe that words employed in such decisions should be given their ordinary grammatical meaning unless the text in which employed clearly indicates some other meaning. We find no such meaning indicated in any of these cases. To the contrary, we find an indication in the Lynn case that the meaning intended was not "final action." Furthermore, it would appear that where the court actually meant to allow withdrawals at any time prior to the "final order," as in the Lynn case and the McGonnigle case, it used the words "final order."

Finding, as we do, that the Board had jurisdiction to make the order of May 29, 1956, and this being the sole claim of the plaintiff as to why further proceedings should be enjoined, plaintiff's request for injunction is denied, the petition ordered dismissed in accordance with the provisions of §709.08 R. C., and final judgment rendered for the defendant at the costs of the plaintiff.

Entry may be prepared accordingly, reserving exceptions.