435 P.2d 284

Ned C. JENSEN, Woodrow E. Hayward, Ray F. Croshaw, A. Foss Peterson and Lowell D. Oswald, Plaintiffs and Appellants,

v.

BOUNTIFUL CITY, a municipal corporation, Defendant and Respondent.

No. 10930.

Supreme Court of Utah.

Dec. 12, 1967.

Thomas, Armstrong, Rawlings, West & Schaerrer, David E. West, Salt Lake City, for appellants.

George K. Fadel, Bountiful, for respondent.

HENRIOD, Justice:

Appeal from a Quo Warranto proceeding initiated by several resident property owners in an area sought by other property owners to be annexed to Bountiful City. Reversed, with no costs awarded.

The statute allowing such annexation requires that a petition be filed, signed by a majority of the owners and not less than a sufficient number of owners representing a third in valuation of the

property, "as shown by the last assessment rolls." [1]

There were 373 such owners shown on the assessment rolls, and 199 signatories to the petition for annexation, which ordinarily would comply with the statute. However, at the meeting of the City Council at which the matter was heard, a petition by 26 of the signers was presented asking to withdraw their names from the petition, which, if allowed, would result in a failure to comply with the statute, by some 13 signatures.

▮ The City urges that the number of signatures should be determined by owners shown on the recorder's records, not those

shown on the assessment rolls. Difficulty with such urgence is that the statute says nothing about the recorder's records as a test of eligibility, but only the owners shown on the assessment rolls. If this court should make the obvious substitution contended for, it would result in judicial legislation,—a luxury not indulgeable by this court.

A lot of discussion was entertained, pro and con re filing the withdrawal with the City Recorder or the Council [2], whether the Council's hearing was at a "special" or "regular" meeting,[3] whether those wishing to withdraw had any standing in court under Quo Warranto proceedings,[4]

1. Title 10-3-1, Utah Code Annotated 1953. Note: The phrase "as shown by the *last* assessment rolls," was repeated twice, both times punctuated identically, and which grammatically would require examination of such rolls to determine ownership numerically and valuation-wise. (Emphasis ours)

2. It is significant to note that the statute requires filing of the petition *for annexation* with the "recorder or town clerk," but that it is silent as to the question as to how the petition or any signatures thereon might be withdrawn before passage of the ordinance. It seems obvious that if all the signatories withdrew before that time the council hardly would be in a position to pass the ordinance anyway.

3. It is also significant that the council had designated the first and third Wednesdays as those upon which business matters would be handled. At a Dec. 7, 1966, meeting, which was the first Wednesday of the month, the petition for annexation was presented, and the council permitted its withdrawal for lack of suf-

ficient signatures. Thereafter, during the ensuing week, petitioners sought and obtained additional signatures. At the Dec. 7th meeting the council called a special meeting for Dec. 14, and designated it as such. Dec. 14 was the *second* Wednesday of the month,—not the *third*. At the Dec. 14 meeting, the council amended its Dec. 7 minutes to read "regular" instead of "special" meeting. Both the petition for annexation and petition to withdraw signatures came up at the Dec. 14 meeting. The council ignored the withdrawal petition, approved the annexation petition, and promptly thereafter passed the ordinance purportedly annexing the area to the City. There is a debatable question as to whether or not the Dec. 14 meeting was a "regular" or "special" meeting, but in view of our decision on other grounds, we do not treat in extenso the merit of either side in such debate.

4. The council passed the ordinance on Dec. 14, with an emergency clause which made it effective Dec. 16, less than 48 hours later. An annexation statute seems

etc. We believe the only pertinent question in this case is whether the withdrawal request was timely,—it being conceded by all that it preceded the adoption of the annexation ordinance.

■ Like a woman's prerogative to change her mind, we think the petitioners' request for withdrawal of their signatures before the petition for annexation was acted upon is even something more convincing than the accepted and revered feminine license. They say they were confused and under the influence of a petition-circulator's zealous potion. Why should these petitioners not be granted their request if it is presented to those in authority before the latter make annexation a fait accompli by ignoring the request of those, who, apparently with studied conviction, honestly seek to erase their participation before action is taken?

We believe and hold their petition to be well taken and the ordinance of annexation therefore invalid for inadequacy of signatories required by the statute.

We think our conclusion here is supported by most of the authorities. It is pretty well conceded that the authorities generally hold that such petitioners can withdraw 1) before the petition is filed but 2) not after the ordinance is enacted under proper procedures.[5] There is no statutory interdiction in the instant case against withdrawal after the filing but before enactment. It is conceded that there is a division of authority in this area. Therefore we look to precedent and in doing so we believe our conclusion here is supported not only by our own court,[6]

---

unlikely to require immediacy of passage, but assuming it might, under Rule 65B (c) this type of action may be instituted by the Attorney General and 65B(d) says a private person may do it if the Attorney General, after notice, won't. The petitioners here gave such notice and in due course the Attorney General refused to sue. It is almost inconceivable that the petitioners could give notice to the Attorney General and that the latter could give any intelligent consideration to the matter and start a suit within less than 48 hours. The fact that the ordinance was recorded on Dec. 20, is not helpful, since that date, being less than six days after passage of the ordinance (two of which days were holidays), is equally vulnerable to pressure of giving notice, careful consideration of the problem, and filing of litigation.

5. State of Kansas ex rel. Weltmer v. Montrose Rural High School Dist., 169 Kan. 653, 219 P.2d 1071, 27 A.L.R.2d 599, 126 A.L.R. 1031.
6. Halgren v. Welling, 91 Utah 16, 63 P.2d 550 (1936), a case having to do with an initiative petition but principle-wise apropos here where we said: "In some cases the matter of protest or withdrawal is a matter of statutory regulation. There is no provision in the Initiative and Referendum Law of the State of Utah relating to the withdrawal of names from a petition after it has been once signed. There is no substantial reason why a person who has once signed a petition may not, at any time before the petition has been acted upon, withdraw his name, and if timely done, his name should not be counted. There is a division in the authorities as to whether the withdrawal

but by a well respected majority view elsewhere.[7] There should be some way in this case, under the statute, reasonably and fairly and quickly to apprise almost all of the people as to the issue and consequences involved, with reasonable opportunity for all or some of the people to express their approval or disapproval within a reasonable time, in accordance with statutory formulae. That would seem to comport with the traditional American idea as reflected in the historical town meeting concept.

The case is reversed and remanded with instructions to enter a judgment in accordance with plaintiffs' prayer that the subject ordinance be declared invalid, and enjoining its enforcement, and in consonance with the observations and conclusion hereinabove set forth.

CROCKETT, C. J., and CALLISTER, and TUCKETT, JJ., concur.

ELLETT, Justice (concurring in the result).

I concur in the result but do it solely on the ground that the statute was not followed by the defendant, in that the City Council voted on the petition for annexation at a *specially* called meeting. The statute under which the City Council is required to act is Section 10–3–1, U.C.A. 1953, and so far as material here reads:

Whenever a majority of the owners of real property and the owners of not less than one-third in value of the real property, as shown by the last assessment rolls, in territory lying contiguous to the corporate limits of any city or town shall desire to annex such territory to such city or town, they shall cause an accurate plat or map of such territory to be made under the supervision * * * of a competent surveyor, and a copy of said plat or map, certified by said * * surveyor * * *, shall be filed in the office of the recorder or town clerk of the city or town, together with a petition in writing, signed by a majority of the real property owners and by the owners of not less than one-third in value of the real property, as shown by the last assessment rolls, of the territory described in said plat; and * * * the city council, * * * at the *next regular meeting* [Emphasis added] thereof shall vote upon the question of such annexation. * * *

The regular meetings of the City Council were held on the first and third Wednesdays of each month. December 7 was a regular meeting, and the next regular date for the council to meet would be December 21.

---

must be made before the petition is filed or before it has been acted upon. *The weight of authority is that the withdrawal may be made at any time be-* fore the petition has been acted upon." (Emphasis added)

7. See note 5.

There was a petition presented to the council on December 7 praying for annexation, but as it did not have the required number of names, it was withdrawn for the purpose of remedying that failure. The City Council then and there called a *special meeting* for December 14. At the meeting on December 14 the Council amended its minutes made December 7 to show that a *regular meeting* was called for December 14.

This change in the minutes did not create a regular meeting date, and this meeting remained a special meeting the same as if the minutes had not been amended, and was not a regular meeting within the meaning of the law. Everyone living in the defendant city knew when the council regularly met and could be present if they cared to oppose a matter under consideration. Any other date set would be known only to those present at the time of the setting thereof, and even though such date be advertised in stentorian tones, it still would not be *regular*.

Believing as I do that the ordinance of annexation was not properly passed, I do not think it is necessary to decide the other issues, and particularly the question of whether a nonowner of property can sign a petition for annexation merely because a year or so prior thereto he happened to have his name upon the assessment roll.