James L. SZATKOWSKI and Vernal W. Thompson, Plaintiff, Appellant, and Cross–Appellee,

v.

BOUNTIFUL CITY, Defendant, Appellee, and Cross–Appellant.

No. 950242–CA.

Court of Appeals of Utah.

Nov. 16, 1995.

---

Paul W. Mortensen, Farmington, for Appellant.

Russell L. Mahan and Matthew C. Barneck, Bountiful, for Appellee.

Before ORME, BILLINGS, and WILKINS, JJ.

## OPINION

BILLINGS, Judge:

This is an appeal from a judgment affirming annexation of certain unincorporated land in Davis County by Bountiful City. Appellants (property owners), who are property owners within the area annexed, challenge the City's annexation on a number of grounds. Appellee (the City) cross appeals several of the trial court's legal conclusions. We affirm.

## FACTS

In May 1992, property owners living in an area of unincorporated Davis County next to Bountiful City petitioned to have their property annexed into Bountiful City. An unofficial map of the area was prepared and attached to most pages of the petition, and the petition was circulated among property owners. The map was not attached to the petition when some property owners signed the petition. The City Engineer prepared and certified a map of the proposed annexation area on October 1, 1992. This certified map was filed with a petition signed by property owners from the proposed annexation area.

On October 7, 1992, Bountiful City Council voted to accept the annexation petition. The City gave notice of a public hearing to consider adoption of a policy declaration regarding the annexation petition pursuant to Utah Code Ann. § 10–2–414 (1992). On December 2, 1992, the City Council held the public hearing and adopted a policy declaration regarding annexation. Prior to the hearing, the City Council received written requests from fifteen property owners to remove their signatures from the annexation petition. Shortly before the hearing, six of these property owners submitted a form to the Council declaring they wished to reinstate their signatures on the annexation petition. One of these six again withdrew her name before the hearing. The City honored all of these requests.

Between the policy declaration vote and the City Council's next meeting, petition proponents filed thirteen more petition signatures with the City. The City added these signatures to the petition totals. On December 9, 1992, the City Council met and adopted an Annexation Resolution.

On November 29, 1993, property owners filed this action in the Second District Court of Davis County challenging the legality of the annexation. The trial court affirmed the City's annexation, and property owners now appeal.

## STANDARD OF REVIEW

■ In Utah, annexation is a statutory procedure governed by Utah Code Ann. §§ 10–2–414 to –417 (1992 & Supp.1995). A city satisfies the statutory requirements through "substantial compliance" with the statute. *See Sweetwater Properties v. Town of Alta,* 622 P.2d 1178, 1183 (Utah), *modified on reh'g,* 638 P.2d 1189 (Utah 1981), *overruled on other grounds, Pike Countryside Annexation v. Vernal City,* 711 P.2d 240 (Utah 1985). The statute endows the city with broad discretion when making decisions which it concludes best fulfill its responsibility for determining municipal boundaries. *Child v. City of Spanish Fork,* 538 P.2d 184, 186 (Utah 1975); *see also Mutz v. Municipal Boundary Comm'n,* 101 N.M. 694, 700, 688 P.2d 12, 18 (N.M.1984) (stating annexation statutes are construed liberally in favor of municipality). We review the trial court's determination of substantial compliance with the annexation statute for correctness, but because of the broad discretion provided in the statute and the varying factual situations relevant to a determination of substantial compliance, we give some deference to the trial court's determination. *See State v. Pena,* 869 P.2d 932, 936–37, 939 (Utah 1994).

Because of our holding that a majority of property owners must approve of annexation only when a City votes to accept a petition and when it votes to pass a final resolution, we deal only with the issues relevant to these votes.[1]

## MAJORITY REQUIREMENTS

In its cross appeal, the City argues the trial court incorrectly held that there must

---

1. Accordingly, we need not reach the issues of whether Michael Gonce's individual petition was sufficient; whether the Colonial View Condominium Homeowners Association is an owner of real property separate from the individual unit owners; whether remainderholders are owners of real property; whether the trial court abused its discretion in admitting evidence; whether a nonsigning property owner who died after the petition was filed should have been excluded as a property owner; and whether governmental entities should have been included as property owners. Furthermore, addressing the City's issue on cross appeal regarding the determination of property owners from the recorder's records rather than the assessor's roll would constitute a purely advisory opinion.

be a majority of property owners in favor of annexation when the City adopted its policy declaration. The City contends that Utah law requires a majority of signatures at only two points in the process—at the time the City accepts the petition, *see* Utah Code Ann. § 10–2–416 (1992), and at the time the city passes the final annexation resolution, *see Jensen v. Bountiful City*, 20 Utah 2d 159, 161–62, 435 P.2d 284, 286 (1967). We agree.

Section 10–2–416 of the Utah Code provides that when a majority of property owners in an area desire annexation, they shall file their petition with a map in the recorder's office. The City may then vote to accept the petition for the purpose of preparing a policy declaration for the proposed annexation.[2] *See* Utah Code Ann. § 10–2–416 (1992). Therefore, the statute requires a majority at the time the petition is filed.

▪ Utah case law also requires a majority of signatures favoring annexation when a city council casts its final vote on annexation. In *Jensen v. Bountiful City*, the Utah Supreme Court held that property owners were free to withdraw their names from the petition at any time before the City's final vote. 435 P.2d at 285. However, if those property owners who withdrew caused the majority favoring annexation to cease, there would be a failure to comply with the statute and the City could not pass an annexation ordinance. *Id.*

▪ Neither Utah statutory nor case law speak directly to whether a majority of signatures is necessary when the city passes its policy declaration. Section 10–2–414, which discusses the policy declaration, states that the city must adopt a policy declaration regarding annexation "in response to an initiated petition by real property owners as provided by law." The City argues that "as provided by law" means only that there must have been a majority of signatures on the

petition when the petition was *filed*. If the petition met the express statutory requirement when it was filed then it need not meet it again at this intermediary point. We agree.

Furthermore, in our sister states the sufficiency of signatures is either measured at the time of filing or at the time the ordinance is passed. In states that measure the sufficiency of the signatures at the time of filing, petitioners are not allowed to withdraw if it would strip the governing body of authority to act. *See, e.g., Sweetwater Fruit Co. v. City Council of National City*, 126 Cal. App.2d 655, 272 P.2d 828, 830 (1954) (prohibiting signatures to be removed after filing of petition if withdrawal would defeat jurisdiction); *City of Roanoke v. County of Roanoke*, 214 Va. 216, 198 S.E.2d 780, 784–85 (1973) (disallowing withdrawal of signatures after petition is filed on jurisdictional basis); *Town of De Pere v. City of De Pere*, 184 Wis.2d 278, 516 N.W.2d 1, 3 (Ct.App.1994) (stating statute requires sufficiency of petition determined at filing and prohibits petitioners from withdrawing after filing); *Miller v. Town of Mills*, 590 P.2d 378, 381 (Wyo.1979) (requiring sufficiency of signatures when petition is filed and prohibiting withdrawal because jurisdiction has vested).

In states that require a majority at the time the final ordinance is passed, petitioners are allowed to withdraw anytime before the final vote. *Moorehead v. Arnold*, 130 Ariz. 503, 505, 637 P.2d 305, 307 (Ct.App.1981) (allowing signatures withdrawn prior to commencement of affirmative legislative action); *Hicks v. Cain*, 154 N.E.2d 199, 206 (Ohio 1957) (allowing signatures withdrawn without loss of jurisdiction).

Arizona requires a majority "once affirmative legislative action has commenced upon a petition," and distinguishes between ministerial and legislative acts. *State v. City of Phoenix*, 74 Ariz. 46, 48–50, 243 P.2d 766,

---

2. Section 10–2–416 provides:
Whenever a majority of the owners of real property and the owners of at least one-third in value of the real property, as shown by the last assessment rolls, in territory lying contiguous to the corporate boundaries of any municipality, shall desire to annex such territory to such municipality, they shall ... [file in the office of

the recorder a map and] a written petition signed by the petitioners. The members of the governing body may ... accept the petition for annexation for the purpose of preparing a policy declaration relative to the proposed annexation.
Utah Code Ann. § 10–2–416 (1992).

768–69 (1952). Under the Utah statutory scheme, the only legislative acts are the initial vote to accept the petition and the final vote passing the annexation ordinance. The policy declaration is a purely ministerial act that follows from the acceptance of the petition and allows input of those interested before the final vote on annexation is taken. *Id.* at 48–50, 243 P.2d at 768–69. Thus other jurisdictions do not measure compliance except at filing and/or passage of the petition.

Substantial policy reasons also favor a determination that a majority of property owners favoring annexation is only necessary when the city accepts the petition and later votes on the ordinance. A policy declaration is adopted at a point in the process where citizens are still debating the issue. An imperfect picture at this midpoint should not invalidate the whole process. Furthermore, in this case, those favoring annexation clearly gained a majority before the City's final vote. To reverse based on the petition count at a midpoint in the process would negate the will of a majority of property owners within the annexed territory. This requirement would also lead to needless duplication. Petitioners, who started and concluded with a majority in favor of annexation, would simply be forced to refile another petition and repeat the process.

## ASSESSMENT ROLLS

■ Property owners contend the City did not have authority to act on the annexation petition. Property owners claim the Assessor's computer program, which lists tax numbers rather than the names of property owners, is not in substantial compliance with the annexation statute's requirements because the owners of real property cannot be identified from the assessor's rolls. *See* Utah Code Ann. § 10–2–416 (1992) (requiring "a majority of real property owners and the owners of at least one-third in value of the real property, as shown by the last assessment rolls"). However, this argument is raised for the first time on appeal, and we are not persuaded that it goes to the subject matter jurisdiction of the trial court or of this court. Therefore, we do not consider it on

appeal. *LeBaron & Assocs. v. Rebel Enters.,* 823 P.2d 479, 482–83 (Utah App.1991).

## MAP REQUIREMENTS

■ Property owners also argue that the annexation must fail because petitioners did not have a "certified" map prepared to circulate with the petition and failed to attach a map on each page of the circulated petition. Property owners seek to invalidate all of the petition signatures with the former argument and thirty-four signatures with the latter.

The statutory directives as to map requirements are contained in section 10–2–416:

> Whenever a majority of the owners of real property ... shall desire to annex such territory to such municipality, they shall cause an accurate plat or map of such territory to be made under the supervision of the municipal engineer or a competent surveyor, and a copy of such [certified] plat or map ... *shall be filed in the office of the recorder of the municipality, together with a written petition signed by the petitioners.*

Utah Code Ann. § 10–2–416 (1992) (emphasis added).

The Utah statute mandates only that a map be filed at the same time as the petition. *See id.* The statute does not require any kind of map or property description on the petition as it circulates. In addition, the statute states that when a majority of property owners desire to annex, the property owners must have a map prepared. *Id.* Unless a petition had been circulated, however, it would be impossible to know whether a majority of property owners desired annexation.

Similarly, in *City of Roanoke v. County of Roanoke,* 214 Va. 216, 198 S.E.2d 780 (1973), the court held that where the statute required the petition be filed with a property description there was "no requirement that a map or a metes and bounds description be exhibited to each signer in advance or that the description not be revised before the petition is filed." *Id.,* 198 S.E.2d at 785.

In the instant case, the petitioners filed a certified map of the territory to be annexed along with their petition at the recorder's

office. Therefore, the trial court correctly determined that the City complied with the annexation statute.

## WITHDRAWAL AND ADDITION OF SIGNATURES

Next, property owners argue that the trial court incorrectly ruled that petitioners could reinstate and add names to the petition after the time the petition was filed with the City.

The only relevant language in the annexation statute states, "a majority of the owners of real property ... shall ... file[ ] ... a written petition signed by the petitioners." Utah Code Ann. § 10–2–416 (1992).

 Utah case law expressly permits the withdrawal of signatures until the passage of the annexation ordinance. *Jensen v. Bountiful City,* 20 Utah 2d 159, 435 P.2d 284, 285 (Utah 1967). The *Jensen* court, noting that there is no statutory interdiction against withdrawal of signatures after a petition is filed but before an ordinance is passed, held that petitioners could alert the City of their position as long as they did so before annexation is a "fait accompli." *Id.* The court stated that "[t]here should be some way ... under the statute, reasonably and fairly and quickly to apprise almost all of the people as to the issue and consequences involved, with reasonable opportunity for all or some of the people to express their *approval* or disapproval within a reasonable time, in accordance with statutory formulae." *Id.* at 286 (emphasis added).

We conclude that if the *Jensen* court could find no statutory interdiction against allowing signatures to be withdrawn, there is similarly no statutory interdiction against allowing signatures to be added or reinstated. Both allow "the people to express their *approval* or disapproval within a reasonable time in accordance with statutory formulae." *Id.*

We conclude the trial court correctly determined that the City substantially complied with the annexation statute when it allowed petitioners to add or reinstate their names in support of annexation after the original petition had been filed but before a final vote on annexation was taken.

## CONCLUSION

We conclude Bountiful City substantially complied with Utah's annexation statute. We conclude that a certified map is only required at the time the petition is filed with the city; that signatures may be added or removed at any time prior to a city's passage of an annexation ordinance; and that a majority of property owners in favor of the petition is therefore only necessary at the time a petition is filed and when a city votes on its annexation ordinance. Therefore, we affirm the trial court's ruling that Bountiful City had the statutory authority to annex the proposed unincorporated area of Davis County.

ORME, P.J., and WILKINS, J., concur.